**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonio H. COLIN,
Defendant–Appellant.**

No. 90–5563
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 1, 1991.

Texas of one count of knowingly possessing, as convicted felon, a firearm in or affecting commerce, in violation of 18 U.S.C. § 922(g)(1), and one count of receiving or possessing a firearm not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). The conviction was based in part on the introduction of a sawed-off shotgun and shotgun shells found at the time of Colin's arrest. Colin had moved to suppress these items as seized in violation of the fourth amendment. The district court denied the motion. We affirm the conviction.

On the night of June 29, 1989, Officer Rudolfo Gomez of the San Antonio, Texas, Police Department stopped a car carrying four passengers, including Colin. Officer Gomez first noticed the car when it swerved in front of him; he then saw that the driver was not wearing a seat belt. While the car was coming to stop, he saw Colin, sitting in the front seat, make suspicious movements. After backup officers arrived, Officer Gomez removed Colin from the car, frisked him, and noticed a bulge in Colin's pant pocket, from which he removed two shotgun shells. He then looked into the car and saw the barrel of a gun, later determined to be a sawed-off shotgun, protruding from under the front seat. A further search of the vehicle yielded six more shells. Colin was arrested; so were the driver and another passenger when an identification check revealed outstanding traffic warrants for them. The fourth passenger, now alleged to be an illegal alien named "Jose Guadalupe," was not taken into custody.

I.

## DENIAL OF MOTIONS TO SUPPRESS

As his first point, Colin argues that Officer Gomez lacked constitutionally sufficient justification to stop the vehicle and to frisk Colin and that he illegally arrested Colin prior to discovering the sawed-off shotgun. We review a district court's findings of fact on a motion to suppress under the clearly erroneous standard, and we re-

Vick Putman, Putman & Putman, Inc., San Antonio, Tex. (court appointed), for defendant-appellant.

LeRoy Morgan Jahn, Philip Police, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Defendant Antonio H. Colin was convicted after a jury trial in the United States District Court for the Western District of

view the court's ultimate determination of fourth amendment reasonableness de novo. *See United States v. Basey*, 816 F.2d 980, 987–88 (5th Cir.1987).

■ The district court made oral findings of fact after hearing testimony at the suppression hearing:

> The court finds that ... the vehicle in which the defendant was traveling ... weaved toward Officer Gomez.... [T]he report does not say anything about whether [Colin] was wearing a seat belt or not. However, his testimony is that both the passenger and the driver were not wearing a seat belt. In any event, this is a violation of state law and the officer had probable cause to stop the vehicle because the driver was not wearing a seat belt.

*Cf.* Tex.Rev.Civ.Stat.Ann. art. 6701d, § 107C(b) (defining traffic offense of riding in front seat of passenger car without a seat belt); *id.* § 153 (authorizing police officers to arrest traffic violators without a warrant).

Colin argues that there was "no objective evidence" that the driver violated any traffic regulations. He makes much of the fact that Officer Gomez did not mention any "weaving" in his final arrest report and did not issue any citations for failure to wear a seat belt. Given the subsequent discovery of a sawed-off shotgun and two outstanding arrest warrants, it is understandable that Officer Gomez lost interest in minor traffic violations. As quoted, the district court found in favor of the government on this issue. Giving due regard for the court's opportunity to judge the credibility of the witnesses, we cannot conclude that these findings of fact were clearly erroneous. Officer Gomez had probable cause to stop the vehicle. Because he had probable cause, his motive—even if anything but proper—was irrelevant. As we have said, "so long as the police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not sub-

ject to inquiry." *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir.1987) (en banc).

■ Second, Colin argues that Officer Gomez possessed no "specific and articulable" facts to warrant frisking him. The district court found that "while following the car, [Officer Gomez] noticed movement on the part of [Colin], stooping down and moving from side to side. I think he said, some unusual movements by the passenger." On these specific and articulated facts, which Colin does not challenge, *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), declares that Officer Gomez acted permissibly. *Long* held that "police may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous." *Id.* at 1047–48, 103 S.Ct. at 3479–80. That a person is "stooping down and moving from side to side" in the front seat of an automobile may form the basis of this reasonable belief. *Cf. United States v. Ullrich*, 580 F.2d 765, 769 (5th Cir.1978) (holding officer was justified in frisking driver who "procrastinated before opening the glove compartment and then simultaneously reached under the seat of the car").[1] Once Officer Gomez saw the bulge in Colin's pocket, it was proper to conduct a more thorough search. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111–12, 98 S.Ct. 330, 333–34, 54 L.Ed.2d 331 (1977) (per curiam).

■ Third, Colin argues that because Officer Gomez arrested him for possession of shotgun shells, which is not an offense under Texas law, the shotgun should have been suppressed as the fruit of a search pursuant to an illegal arrest. Colin cannot prove the first premise of this argument— that he was arrested *prior* to discovery of the shotgun. At the suppression hearing, Officer Gomez testified (emphasis added): *"At the time that I found the weapon* I proceeded to place him under arrest." On cross-examination, Colin's counsel did not refute this sequence of events. Based on

---

1. Colin cites *Keah v. State,* 508 S.W.2d 836 (Tex. Crim.App.1974), and *State v. Williams,* 366 So.2d 1369 (La.1978), as holding to the contrary. Besides being in conflict with *Long* and *Ullrich,* these decisions, emanating from courts of co-ordinate jurisdiction, do not bind our court.

the testimony, the district court agreed with Officer Gomez (emphasis added): "Upon finding the shotgun shells and looking into the car *and seeing on the floorboard, in plain view, the shotgun*[, t]hen he had probable cause to arrest the defendant for possession of a firearm, illegal firearm." The district court did not clearly err in so finding.[2] In any event, the shotgun was not discovered as the result of a search incident to an arrest. As the district court also found, Officer Gomez saw the shotgun "in plain view." The court properly denied Colin's motion to suppress.

## II.

### RELEASE OF MATERIAL WITNESS

■ Finally, Colin argues that his rights to due process and confrontation were violated because Officer Gomez "released" a material witness, namely, illegal alien "Jose Guadalupe," a fellow passenger in the car. Because the government did not use Guadalupe's testimony at trial, in either live or recorded form, confrontation is not at issue here. "Due process," we assume, refers in this context to Colin's right to compulsory process. This right proscribes "the government's making a witness unavailable and thereby preventing a defendant from interviewing the witness and determining whether he will subpoena and call the witness in his defense. Thus, the government may not deny the defendant access to a witness by hiding him out." *United States v. Henao*, 652 F.2d 591, 592 (5th Cir. Unit B Aug. 1981). Surely, the conduct of Officer Gomez, even if it can be ascribed to the United States, did not rise to this level. The officer simply did not arrest Guadalupe; he had no consti-

tutional duty to do so. In no way did Officer Gomez "hide" Guadalupe or otherwise make him "unavailable." We reject Colin's argument.

The judgment of the district court is AFFIRMED.

---

**2.** As indicated, Colin did not dispute the testimony of Officer Gomez at the suppression hearing. In support of his claims, he can point only to the response of Officer Gomez, *at trial,* to a question on cross-examination:

> Q [The prosecutor asked you] about the gun being at Mr. Colin's feet. Well, as I understand it, you didn't see the gun protruding *from the front seat until after you had arrest*ed Mr. Colin, put the handcuffs on him, delivered him to Officer Richter, was it?
>
> A Yes, sir, that is correct.

This response could mean that, yes, Officer Gomez had "handcuffed" and "delivered" Colin, without necessarily meaning that he had formally "arrested" him. In *Ullrich,* we held that a police officer took reasonable steps to ensure his safety by "frisking the suspect and securing him in the back seat of the patrol car, where no bodily harm could result, before checking under the front seat of the automobile for a weapon." 580 F.2d at 769. Given this holding, even if Officer Gomez did handcuff Colin before finding the shotgun, he would have been justified in doing so.