# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 1, 2010

No. 09-20708
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ARMANDO MIRANDA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CR-100

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Armando Miranda pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922 and was sentenced to 96 months' imprisonment. However, in his plea agreement, Miranda reserved the right to appeal the district court's denial of his motion to suppress the firearm that was found on his person during a police pat-down. Miranda appeals on that basis,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20708

and we AFFIRM his conviction and sentence.

## I. BACKGROUND

By 2008, Officer Clint Ponder had worked in the Houston Police Department's Fondren Divisional Gang Unit for around seven years. In that role, he had gained knowledge of several local gangs, including the "La Primera" gang. Ponder knew that La Primera was engaged in a host of criminal activities in Houston, ranging "from narcotics to robberies to homicide." During this time, Ponder had personally arrested several La Primera members, who were often armed with guns, knives, and other weapons.

Ponder's beat included the La Promenade apartment complex, which was located in a crime-ridden section of Houston. Ponder knew that La Primera was associated with La Promenade and that its members would often trespass on the property. To combat this activity, the manager of La Promenade had authorized police, by a written affidavit, to come onto the property, ask individuals whether they lived there, and arrest those who were trespassing.

On October 17, 2008, Ponder and his partner, Officer Dominguez, were on La Promenade's property when they saw a man wearing a long white belt and a white rosary—La Primera's "colors." Upon further inspection, Ponder recognized the man as Armando Miranda; Ponder had arrested Miranda for a marijuana offense at La Promenade in 2004, knew he was involved with La Primera, and knew that he had been incarcerated for a robbery committed in the area.

Suspecting that Miranda may have been trespassing, Ponder and Dominguez stopped Miranda and asked him what he was doing at the apartment. Shortly after stopping Miranda, and concerned for their safety during an encounter with a known felon and gang member in a known gang area suffering from crime, Dominguez frisked Miranda for weapons. Ponder and Dominguez found a pistol and narcotics on Miranda, and they arrested him.

A federal grand jury returned a one-count indictment, charging Miranda with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Before trial, Miranda moved to suppress the pistol and the narcotics, arguing that Ponder and Dominguez lacked reasonable suspicion to undertake the *Terry* stop and frisk. As such, Miranda contended, the officers' warrantless detention and search violated his Fourth Amendment rights, and the pistol and drugs should be suppressed.

The district court denied this motion, reasoning that Ponder's experiential knowledge coupled with his suspicion that Miranda was trespassing justified the stop and frisk. The Government and Miranda then entered into a plea agreement, under which Miranda pleaded guilty to count one of the indictment and waived his right to appeal, excepting an appeal of the district court's denial of his motion to suppress. The district court accepted the plea agreement and sentenced Miranda to 96 months' imprisonment. Miranda timely appealed.

## II. DISCUSSION

Miranda argues that "although the officers had reasonable suspicion to stop him, they lacked particularized reasonable suspicion to frisk him for weapons." We disagree.

### A. Legal Standards

"[T]he policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect." *Adams v. Williams*, 407 U.S. 143, 146 (1972). "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer," he has the "authority to [conduct] a reasonable search for weapons for the protection of the police officer . . . [if] a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 24, 27 (1968). In short, "*Terry* requires reasonable,

individualized suspicion before a frisk for weapons can be conducted." *Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990).

"[D]eterminations of reasonable suspicion . . . should be reviewed de novo on appeal." *Ornelas v. United States*, 517 U.S. 690, 699 (1996).  However, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*  "This [review] process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

### B.  The Stop and Frisk of Miranda

The "totality of the circumstances" shows that Officers Ponder and Dominguez had reasonable suspicion to stop and subsequently frisk Miranda for weapons.  First, the officers knew they were in a crime-ridden neighborhood and were on the property of an apartment complex, which was suffering from gang-related activity and had enlisted local police to monitor the area.  "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.  But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citation omitted).

Second, Ponder knew Miranda, having previously arrested him, and also knew of both Miranda's recent criminal record and gang activity.  This information, coupled with Ponder's experiential knowledge concerning the La Primera gang and its violent proclivities (including its tendency to carry weapons), supports the suspicion that Miranda may have been armed and

dangerous. *See United States v. Garza*, 921 F.2d 59, 60 (5th Cir. 1991) (citing officer's knowledge of defendant's prior criminal activities as support for suspicion that defendant may be armed and as justifying a frisk for weapons); *cf. United States v. Barboza*, 412 F.3d 15, 15–16 (1st Cir. 2005) (finding reasonable suspicion to conduct a pat-down search where defendant was on a street known for gang violence and the "[o]fficer . . . recognized Defendant[ ] . . . as that of a gang-affiliated individual who routinely carried a firearm"); *United States v. Walden*, 146 F.3d 487, 491 (7th Cir. 1998) (*Terry* frisk was reasonable where "an officer [had] information that [defendant] was involved in 'gang crime activity' and was 'armed and dangerous' [and thus] could certainly believe that [defendant] posed a potential threat to him"); *United States v. Santio*, 351 F. App'x 324, 328–29 (10th Cir. 2009) ("Although gang affiliation or prior criminal conduct cannot, standing alone, create a reasonable suspicion to support a search or seizure, under certain circumstances it may be an appropriate factor in determining if reasonable suspicion exists for a detention or search.").

In sum, the circumstances here led Ponder to reasonably suspect that Miranda was trespassing on La Promenade's property and that he may have been armed and dangerous: Miranda was a known felon, a gang member in a violent gang, wearing gang colors, and trespassing at an apartment complex, which was suffering from gang-related crime. Indeed, we have recognized that "when someone engages in suspicious activity in a high crime area, where weapons and violence abound, police officers must be particularly cautious in approaching and questioning him." *United States v. Rideau*, 969 F.2d 1572, 1575 (5th Cir. 1992) (en banc) (finding that those circumstances combined with defendant's nervous behavior justified a *Terry* frisk). We agree with the district court that a "reasonably prudent [person]" in Ponder's (and Dominguez's) position would be warranted in believing that his safety was endangered, *Terry*, 392 U.S. at 27, and that reasonable suspicion supported the frisk of Miranda.

No. 09-20708

*See id*; *Buie*, 494 U.S. at 334 n.2. The pistol uncovered by this search was properly admitted.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of conviction and sentence.

AFFIRMED.